Affirmed and Opinion filed January 9, 2007








Affirmed and Opinion filed January 9, 2007.

 

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00031-CV

____________

 

DAVID MANDELL, Appellant

 

V.

 

JEANNE MANDELL, JOYCE FIELD, AND
SUSAN ALEXANDER, INDEPENDENT CO-EXECUTRICES OF THE ESTATE OF SAM FIELD,
DECEASED,
Appellees

 



 

On Appeal from the Probate
Court No. 2

Harris County, Texas

Trial Court Cause No. 275,758-401

 



 

O P I N I O N

Appellant, David Mandell, appeals a summary judgment
granted in favor of appellees, Jeanne Mandell, Joyce Field, and Susan
Alexander, executrices of the Estate of Sam Field (AThe Estate@).  In five
issues, appellant contends the trial court erred in  (1) granting appellees= motion for
summary judgment, (2) denying his motion for summary judgment, (3) overlooking
the finality of the  partial summary judgment, (4) awarding attorney=s fees to
appellees, and (5) denying appellant=s right to a jury
trial.  We affirm.








Factual and Procedural Background

In 1956, William Mandell, David=s father,
purchased a 15% interest in 240 acres in northwest Houston.  In 1966, William
purchased the remaining 85% interest in the property and gave a 50% interest to
Sam Field, who had lent William the purchase money.  In the intervening years,
William married Rene Deutser.  David Mandell is William and Rene=s only child.  On
August 4, 1972, William shot and killed Rene.  William was subsequently
convicted of murder without malice and served two years of a two to five year
sentence.  While his father was incarcerated, David lived with his aunt and
uncle, Jeanne and Milton Mandell.  Milton was appointed guardian of David=s estate.

In 1987, when David reached the age of majority, Milton
Mandell, acting in his capacity as guardian, conveyed a 17.5% interest in the
240 acres to David.  The 17.5% interest represented David=s mother=s community
interest in the 35% interest William acquired after the marriage.  After Sam
Field=s death, his
interest in the property passed to the Estate.

In 1995, David sued William, Jeanne and Milton Mandell, and
the Estate for alleged mismanagement of his mother=s estate.  David
hired the law firm of Spencer & Associates (ASpencer@) to represent
him, and entered into a contingency fee contract in which he agreed to give
Spencer 50% of his recovery in the suit.  As part of the settlement, David
received an additional 7.5% interest in the property, which increased his total
interest to 25%.  On March 27, 1998, the parties entered into a settlement
agreement in which they agreed, among other things, to a preferential purchase
right.[1] 
Specifically, the parties agreed that, ADavid Mandell and
all other owners of the 240 Acre Tract reserve the first right to purchase from
the remaining owners the share of that owner at the price offered by any
subsequent purchaser.@ 








On November 5, 1998, David executed a general warranty deed
transferring 3.75% of the property to Spencer.  In his deposition, David
admitted he did not inform William or the Estate about the transaction at that
time.  On July 19, 1999, Spencer sent a letter to William and the Estate
advising that, AAs part of the fee agreement for our
attorney=s fees in the
representation of [David], Mr. David Mandell will grant to the firm a portion
of his ownership interest in the 240 acre tract of land[.]@  On July 30,
1999, William and the Estate wrote a letter rejecting David=s attempt to
convey the property as part of a fee agreement.  The letter stated that William
and the Estate considered the conveyance a breach of the settlement agreement. 
On August 5, 1999, in a letter sent to William, but not the Estate, Spencer
informed William that the deed had already been executed.  On November 18,
1999, David sent a letter to the Estate stating he did not intend to convey any
of his ownership interest, but intended to maintain his 25% interest in the
property.

More than three years later, on January 31, 2003, the
Estate accepted William=s offer to purchase its 50% interest in
the property.  On February 3, 2003, the general warranty deed, executed in
1998, conveying a 3.75% interest in the property to Spencer was recorded.  On
March 7, 2003, the Estate sold its interest to William for approximately $10,000
per acre.  David subsequently filed this suit alleging that the Estate had
breached the settlement agreement by not permitting him an opportunity to
purchase the Estate=s interest.  Both parties filed motions for
summary judgment alleging that the other party had breached the agreement as a
matter of law.  The trial court granted the Estate=s motion, and
entered a partial summary judgment on January 6, 2006.  A hearing on attorney=s fees was later
held and final judgment was entered granting judgment in favor of the Estate,
including attorney=s fees.

Standard of Review








Under the traditional standard for summary judgment, the
movant has the burden to show that no genuine issue of material fact exists and
that the movant is entitled to judgment as a matter of law.  Tex. R. Civ. P. 166a(c);  KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex.
1999).  When both parties move for summary judgment, each party Abears the burden
of establishing that it is entitled to judgment as a matter of law.@  Guynes v.
Galveston County, 861 S.W.2d 861, 862 (Tex. 1993).  When, as here, a trial
court=s order granting
summary judgment does not specify the grounds relied upon, we must affirm the
summary judgment if any of the summary judgment grounds are meritorious.  Oliphint
v. Richards, 167 S.W.3d 513, 515B16 (Tex. App.CHouston [14th
Dist.] 2005, pet. denied).

Breach of Contract

In his first and second issues, David contends the trial
court erred in granting the Estate=s motion for
summary judgment and in denying his motion.  Both David and the Estate argue
that the other party breached the settlement agreement.  The Estate argues that
by selling a 3.75% interest in the property within months of signing the
settlement agreement, David breached the agreement first, thereby excusing the
Estate from performance.  David argues he did not breach the settlement
agreement because (1) the conveyance of the property did not trigger the
preferential purchase right, (2) the Estate had notice of the conveyance
because it had notice of David=s contingent fee agreement with Spencer,
and (3) the Estate waived its right of first purchase by failing to timely
assert it.  








A preferential right of purchase is a right granted to a
party giving him or her the first opportunity to purchase property if the owner
decides to sell it.  North Central Oil Corp. v. Louisiana Land and
Exploration Co., 22 S.W.3d 572, 579 (Tex. App.CHouston [1st
Dist.] 2000, pet. denied).  A preferential purchase right is essentially a
dormant option.  A.G.E., Inc. v. Buford, 105 S.W.3d 667, 673 (Tex. App.CAustin 2003, pet.
denied).  It requires the property owner, before selling it to another, to
offer it to the rightholder on the terms and conditions specified in the
contract granting the right.  West Texas Transmission, L.P. v. Enron Corp.,
907 F.2d 1554, 1561B62 (5th Cir. 1990).  When a sale is made
in breach of the right of first purchase, it therefore creates in the rightholder
an enforceable option to acquire the property according to the terms of the
sale.  Koch Indus., Inc. v. Sun Co., 918 F.2d 1203, 1211 (5th Cir.
1990).  The option is not perpetual, however, and the rightholder must choose
between exercising it or acquiescing in the transfer of the property.  A.G.E.,
105 S.W.3d at 673.

The summary judgment proof shows that David breached the
settlement agreement by selling a portion of his interest in the property
without first offering William or the Estate the first right to purchase the
property.  The record reflects a general warranty deed in which David conveyed
a 3.75% interest in the property in exchange for ten dollars Aand other good and
valuable consideration.@  The settlement agreement states that the
Aowners of the 240
Acre Tract reserve the first right to purchase from the remaining owners the
share of that owner at the price offered by any subsequent purchaser.@  By its plain
language, the settlement agreement required David to give William and the
Estate the right to purchase the 3.75% interest at the same purchase price. 
Because David failed to give the other owners this opportunity, he breached the
contract.  The fact that David now calls the transfer of the property a Aconveyance@ instead of a Asale@ does not change
the nature of the transaction.  See A.G.E., 105 S.W.3d at 673B74 (conveyance of
property in satisfaction of attorney=s fees considered
a sale that invoked first right of purchase).

Waiver
of Preferential Purchase Right

David argues that even if the conveyance is considered a
sale, the Estate waived its preferential purchase right by failing to timely
assert it.  David contends that the Estate knew of the terms of his agreement
with Spencer and was obligated to assert its right at that time.  The only
summary judgment proof regarding David=s contingent fee
agreement was his deposition testimony in the 1995 lawsuit and his affidavit in
support of summary judgment stating that he agreed to give his attorneys 50% of
his recovery in the lawsuit.  In his deposition, David testified that he had a
written agreement with his attorneys, but did not produce it based on his
counsel=s advice.  








David argues that his testimony concerning his contingent
fee agreement put the Estate on notice that he intended to sell a portion of
his interest in the property.  When a property owner expresses his or her
intention to sell the property the holder of a right of preferential purchase
is obligated to elect to either purchase the property or permit the property
owner to sell it.  A.G.E., 105 S.W.3d at 673; Martin v. Lott, 482
S.W.2d 917, 922 (Tex. Civ. App.CDallas 1972, no writ).  By informing the
Estate of his contingent fee agreement, David did not express an intention to
sell a portion of the property.  The only intention expressed by David was that
he would pay his attorneys 50% of his recovery in the lawsuit.  The Estate was
not put on notice that David intended to sell the property.

For the first time on appeal, David argues that the
conveyance of the property occurred prior to his agreement to the preferential
purchase right because Spencer=s interest in the property Avested@ at the time the
agreement was signed.  David waived this argument by failing to raise it in the
trial court.  See McConnell v. Southside Ind. School Dist., 858 S.W.2d
337, 341 (Tex. 1993) (issues a non‑movant contends avoid the movant=s entitlement to
summary judgment must be expressly presented by written answer to the motion or
by other written response to the motion).

Finally, David argues that the Estate received notice of
the conveyance in the July 19, 1999 letter, but waived its preferential
purchase right by failing to timely assert it.  Acquiescence in a sale that
violates one=s preferential purchase right constitutes conduct
inconsistent with an intention to purchase.  Koch Indus., 918 F.2d at
1212.  Here, the Estate did not acquiesce in the conveyance to Spencer.  Upon
receipt of the letter notifying it of the potential sale, the Estate rejected
the proposed sale and informed David it would treat the proposed conveyance as
a breach of the agreement.  Several months later, the Estate received a letter
from David stating he did not intend to sell any of his interest in the
property.  Therefore, the Estate had no notice of the conveyance until it was
recorded on February 3, 2003, three days after the acceptance of William=s offer to
purchase the Estate=s interest in the property.  Therefore,
the Estate did not waive its preferential purchase right by acquiescing in the
conveyance.








Conclusion

David breached the preferential purchase right in 1998 when
he conveyed an interest in the property without permitting the Estate or
William the opportunity to purchase that interest.  The Estate breached the
agreement when it conveyed its interest to William in 2003. When one party to a
contract commits a material breach of that contract, the other party is
discharged or excused from further performance.  Mustang Pipeline Co., Inc.
v. Driver Pipeline Co., Inc., 134 S.W.3d 195, 196 (Tex. 2004). 
Therefore, David=s prior breach excused the Estate=s breach. 
Further, a party who has breached a contract cannot then maintain a suit for
the subsequent breach by another party.  Id. at 198; Dobbins v.
Redden, 785 S.W.2d 377, 378 (Tex. 1990).  Because David breached the
settlement agreement by conveying the property to his attorney, he cannot
maintain a suit against the Estate for breach of the same provision.  The trial
court correctly granted the Estate=s motion for
summary judgment, and denied David=s competing
motion.  David=s first and second issues are overruled.

Finality of Judgment








In his third issue, David contends that the trial court
erred in overlooking the finality of the January 6, 2006, judgment.  On January
6, 2006, the trial court granted partial summary judgment in favor of the
Estate.  A summary judgment that does not dispose of all the parties or issues
is interlocutory.  Schlipf v. Exxon Corp. 644 S.W.2d 453, 454 (Tex.
1982).  The judgment entered on January 6, 2006, disposed of the breach of
contract and declaratory judgment issues.[2] 
In addition to relief on the breach of contract and declaratory judgment
issues, the Estate sought to recover its attorney=s fees.  The
summary judgment did not become final and appealable until January 23, 2006,
when the trial court entered judgment on the breach of contract and the Estate=s attorney=s fees.  See McNally v. Guevara, 52 S.W.3d 195, 196 (Tex. 2001)
(holding summary judgment order was not a final judgment because it did not
dispose of the defendants= claim for attorney=s fees).  David=s third issue is
overruled.

Attorney=s Fees

In his fourth issue, David contends the trial court erred
in awarding attorney=s fees because (1) the Estate is not
entitled to attorney=s fees under the Declaratory Judgments
Act; and (2) evidence submitted in support of attorney=s fees should have
been excluded.  

Declaratory
Judgments Act

Under the Declaratory Judgments Act, the trial court has
discretion to award attorney=s fees subject to certain requirements.  Bocquet
v. Herring, 972 S.W.2d 19, 21 (Tex. 1998); Tex. Civ. Prac. & Rem. Code Ann. ' 37.009.  The
award of attorney=s fees is not limited to the plaintiff or
the party affirmatively seeking declaratory relief.  Knighton v. IBM Corp.,
856 S.W.2d 206, 210 (Tex. App.CHouston [14th Dist.] 1993, writ denied).  

The Declaratory Judgments Act entrusts attorney=s fee awards to
the trial court=s sound discretion, subject to the
requirements that any fees awarded be reasonable and necessary, which are
matters of fact, and to the additional requirements that fees be equitable and
just, which are matters of law.  Bocquet, 972 S.W.2d at 21.  In
reviewing an attorney=s fee award under the Act, we review the
evidence for factual sufficiency.  Id.  In considering whether attorney=s fees are
reasonable and necessary, we are guided by the non-exhaustive list of factors
set forth in disciplinary rule 1.04.  See id.  Those factors include: 

(1) the time and labor required, the novelty and difficulty of the
questions involved, and the skill requisite to perform the legal service
properly; 

 

(2) the likelihood, if apparent to the client, that the acceptance of
the particular employment will preclude other employment by the lawyer; 

 

(3) the fee customarily charged in the locality for similar legal
services; 

 

(4) the amount involved and the results obtained; 








(5) the time limitations imposed by the client or by the circumstances;


 

(6) the nature and length of the professional relationship with the
client; 

 

(7) the experience, reputation, and ability of the lawyer or lawyers
performing the services; and 

 

(8) whether the fee is fixed or contingent on results obtained or
uncertainty of collection before the legal services have been rendered. 

 

Tex. Disciplinary R. Prof=l Conduct 1.04, reprinted in
Tex. Gov=t Code Ann., tit. 2, subtit.
G app. A (Texas State Bar R. art. X, ' 9).

Robert MacIntyre, the Estate=s attorney,
testified that the Estate had incurred fees of $108,354.53 up to the time of
trial, and fees of approximately $30,000 since January 1, 2006.  With regard to
the first factor, MacIntyre testified that his firm spent seven to eight months
responding to a claim in excess of one million dollars.  MacIntyre also
testified that he was deprived of employment on other cases due to the
resources required to respond to David=s suit.  He further
testified that his fees were consistent with those charged in Harris County. 
With regard to the sixth and seventh factors, MacIntyre testified that he had a
long standing relationship with the Estate and that he had thirty-three years= experience as the
administrator and representative of similar estates.  With regard to the eighth
factor, MacIntyre testified that his fee was a fixed fee not dependent on the
outcome of the case.








David contends, for the first time on appeal, that because
his claim for declaratory relief mirrored his breach of contract claim, the
Estate cannot recover attorney=s fees under the Declaratory Judgments
Act.  See Adams v. First Nat=l Bank of
Bells/Savoy, 154 S.W.3d 859, 873 (Tex. App.CDallas 2005, no
pet.) (When a party brings a declaratory judgment action that mirrors relief
sought by the original claim, attorney=s fees cannot be
recovered under the Declaratory Judgments Act).  As a prerequisite to
presenting a complaint for appellate review, the record must show that the
complaint was made to the trial court by a timely request, objection, or
motion.  Tex. R. App. P.
33.1(a).  By failing to raise this issue in the trial court, David waived
error.  See Save Our Springs Alliance, Inc. v. Lazy Nine Mun. Utility Dist.,
198 S.W.3d 300, 318 (Tex. App.CTexarkana 2006, pet. filed) (identical Amirror image@ argument waived
when not raised in the trial court).

Evidentiary
Issues

David next complains that the trial court abused its
discretion in admitting evidence of the Estate=s attorney=s fees because the
Estate failed to produce the documents relied on in seeking attorney=s fees.  An
appellate court reviews a complaint regarding the admission or exclusion of
evidence under an abuse of discretion standard.  City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995).  

On August 1, 2005, David requested disclosure of all items
required by Rule 194.2 of the Texas Rules of Civil Procedure.  Under Rule
194.2(f), the Estate was required to disclose any documents relied on by a
testifying expert.  At the time of its initial response, the Estate stated that
it would supplement with any required documents for testifying experts. 
Following the trial court=s ruling on January 6, 2006, the Estate=s counsel
contacted David=s counsel and asked whether David intended
to try the issue of attorney=s fees to a jury.  The Estate=s counsel further
stated that he assumed David would want copies of the attorney=s billing
statements and that the Estate was in the process of assembling that
information.  David=s counsel responded by continuing to
insist that the January 6, 2006, order was a final judgment, and that Aany attempts by
[the Estate=s counsel] or the court to conduct a pre-trial
conference or evidentiary hearing will be construed as an ex parte
communication in violation of State Bar Rules.@  At 4:41 p.m.,
January 20, 2006, the Friday before the hearing on attorney=s fees was set to
take place on Monday, January 23, 2006, David filed a motion to exclude any
expert testimony regarding attorney=s fees due to
discovery violations.  








David waived any complaint about the Estate=s failure to
supplement discovery responses by first refusing the Estate=s offer of the
documents.  The Estate attempted to supplement its discovery responses, but
David refused to accept any discovery, and informed the Estate that any hearing
it attempted to hold would be considered an ex parte communication.  Second,
David failed to obtain a ruling compelling discovery prior to the start of
trial.  See Remington Arms Co. v. Caldwell, 850 S.W.2d 167, 170 (Tex.
1993) (Athe failure to
obtain a pretrial ruling on discovery disputes that exist before commencement
of trial constitutes a waiver of any claim for sanctions based on that conduct.@).  David did not
file a motion to exclude expert testimony until this court denied his attempt
to delay the hearing.  By waiting until the eve of trial to file his motion,
David waived his complaint on the exclusion of evidence.

David further complains of the trial court=s failure to
exclude lay testimony on attorney=s fees.  Jeanne
Mandell, one of the executrices of the Estate, and Laura Charleson, a former
employee of Sam Field, testified that at the time of trial, the Estate had paid
$108,354.53 in attorney=s fees to defend David=s suit.  David
objected to the testimony on the grounds of irrelevancy and hearsay.  On
appeal, David contends the evidence should have been excluded and that the lay
testimony cannot support an award of attorney=s fees.  Even if
the lay testimony could not support an award of fees, MacIntyre=s testimony was
factually sufficient to support the trial court=s award of
attorney=s fees. 
Therefore, the trial court=s admission of Mandell=s and Charleson=s testimony was
not harmful.  David=s fourth issue is overruled.

Jury Trial

In his fifth issue, David contends the trial court erred in
denying his request for a jury trial.  At the time David filed his original
petition, he requested a jury trial and paid the jury fee.  After granting the
Estate=s motion for
summary judgment, the trial court asked the following questions:

THE COURT: If you would all agree to it and approve it as to form. 
Does this leave anything to try in three weeks?

 

MR. MACINTYRE [The Estate=s counsel]: Our attorney=s fees.

 








THE COURT: Do you want a jury trial on that?

 

MR. MACINTYRE: No, sir.

 

THE COURT: Good.  I don=t either.  When is that set?

 

* * * * *

 

THE COURT: That=s all right.  So we will go ahead
and do the trial on the 23rd just on the attorney=s fees, unless you can work something out.

 

MR. MACINTYRE: Yes, sir.

 

THE COURT: All right.  Thank ya=ll.

 

MR. HROCH [David=s counsel]: May we be dismissed?

 

THE COURT: Yes.

 

Following the hearing, on January 11, 2006, the Estate=s counsel wrote to
David=s counsel stating,
AFirst, you have
requested a jury and paid a jury fee.  At the hearing last Friday, you were
silent when Judge Wood raised the matter of using a jury.  Is it your intent to
try the attorney=s fees issue to a jury?@  David=s response to the
Estate=s question about a
jury trial was the same as his response to the Estate=s offer to produce
billing records.  David chose to treat the January 6, 2006, judgment as final
and refused to participate in any proceeding concerning attorney=s fees.  Not until
this court denied David=s eleventh hour attempt to delay the
hearing on attorney=s fees did David file his objection to the
court=s removal of the
case from the jury docket.








The Estate contends that David failed to timely object to
the removal of the case from the jury docket and thereby waived his right to a
jury trial.  See In re J.N.F., 116 S.W.3d 426, 434B35 (Tex. App.CHouston [14th
Dist.] 2003, no pet.).  Waiver requires either the intentional relinquishment
of a known right or intentional conduct inconsistent with claiming that right. 
In re General Electric Cap. Corp., 203 S.W.3d 314, 316 (Tex. 2006).  For
a court to determine if waiver has occurred, it must examine the acts, words,
or conduct of the parties.  Robinson v. Robinson, 961 S.W.2d 292, 299
(Tex. App.CHouston [1st Dist.] 1997, no writ). 

Through his actions at the summary judgment hearing, and
his correspondence with counsel after the hearing, David waived a jury trial on
the issue of attorney=s fees.  The trial court specifically
asked if the Estate wanted a jury trial on the issue of attorney=s fees.  When the
Estate=s counsel stated
he did not want a jury trial, David did not assert his right to a jury trial. 
Further, the Estate again questioned David about his right to a jury trial. 
David chose to treat the partial summary judgment as a final judgment and the
hearing on attorney=s fees as an Aex parte
communication.@  Having made that choice, David intentionally waived
his right to a jury trial on the issue of attorney=s fees.  David=s fifth issue is
overruled.

The judgment of the trial court is affirmed.

 

 

 

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Opinion filed January 9, 2007.

Panel consists of
Chief Justice Hedges and Justices Fowler and Edelman.

 









[1]  Although appellant attempts to distinguish the
terminology, a preferential right of purchase provides no greater rights than a
right of first refusal.  See McMillan v. Dooley, 144 S.W.3d 159, 171
(Tex. App.CEastland 2004, pet. denied).





[2]  The summary judgment order contained no AMother Hubbard@
language.