Candis PAYNE, Plaintiff–Appellant

v.

WELLS FARGO BANK NATIONAL AS-SOCIATION; John Does 1–5; Dennis P. Schwartz, Defendants–Appellees.

No. 15–10366
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 2016.

Michael W. Johnston, Nathan Butler Schattman, Johnston Legal Group, P.C., Fort Worth, TX, for Plaintiff–Appellant.

Richard A. Illmer, Esq., Justin Edward Allen, Esq., Husch Blackwell, L.L.P., Dallas, TX, Elizabeth Gabrielle Bloch, Esq., Husch Blackwell, L.L.P., Austin, TX, for Defendants–Appellees.

Before KING, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM: *

After Wells Fargo Bank, N.A. foreclosed on Candis Payne's home, she sued in Tex-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under

as state court, alleging, among other claims, that Wells Fargo failed to provide proper notice and failed to apply insurance proceeds to cure her default. Wells Fargo removed the case to federal court and moved for summary judgment, which the court granted. We affirm.

In November 2006, Payne obtained a loan from LMI Funding to buy a house in Dallas, Texas. She signed a promissory note and a deed of trust, which were transferred to Wells Fargo in 2007. In February 2008, a fire damaged Payne's home and she submitted a claim of loss to her insurer, ASI Lloyds. Payne then fell behind on her mortgage payments and defaulted on her loan in March 2008. Providing notice that the loan was in default, Wells Fargo gave Payne until July to bring it current. Payne failed to cure the default and thereafter filed for bankruptcy, postponing foreclosure.

During the pendency of Payne's bankruptcy proceedings, Wells Fargo received an insurance check as payment for the fire damage. Pursuant to the terms of the deed of trust, insurance proceeds were to be made payable to the lender, and the lender had the option of applying the insurance proceeds to reduce the indebtedness of the loan or to repair the damaged property. Wells Fargo endorsed the check in May 2009 but did not act to repair the property or reduce the loan. Payne's bankruptcy proceedings were dismissed in June 2009. A foreclosure sale followed in September 2009, and Wells Fargo purchased the property.

Payne sued Wells Fargo and others in state court, challenging Wells Fargo's authority to foreclose. Wells Fargo removed the case to federal court on the basis of diversity and filed a motion to dismiss. The magistrate judge ("MJ") recommended granting the motion but permitting Payne to replead her claims related to lack of proper notice. Neither party objected. Payne filed a second amended complaint, reasserting many of the same claims, and Wells Fargo moved for summary judgment.[1] The MJ recommended granting summary judgment, and the court adopted the recommendation over Payne's objections. This appeal followed.

We review a grant of summary judgment de novo and affirm if the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see Williams v. N. Am. Van Lines of Tex., Inc.*, 731 F.3d 367, 368 (5th Cir.2013). "An issue is material if its resolution could affect the outcome of the action." *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001).

Payne appeals on nine claims: breach of contract; wrongful foreclosure; usury; common law fraud; Texas Deceptive Trade Practices Act ("DTPA"); Texas Theft Liability Act; money had and received; slander of credit; and declaratory judgment. We examine each in turn.

 Payne first asserts that Wells Fargo breached the terms of the deed of trust. This claim is predicated on Payne's contention that Wells Fargo misused the insur-

---

the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1. In her amended original petition, Payne alleged: (1) wrongful foreclosure, (2) money had and received, (3) fraud, (4) negligence, (5) breach of contract, (6) agency, and (7) slander of credit. After the court granted Wells Far-

go's motion to dismiss, but allowed Payne to replead certain claims, Payne filed a second amended petition that reiterated her previously dismissed claims, absent her claim for negligence. Because Payne was given leave to amend, we confine our review to the district court's grant of summary judgment.

ances proceeds by failing to apply the funds to the note thereby curing her default. The deed of trust, however, expressly provides that Wells Fargo is entitled to use the insurance funds to repair damage to the property rather than credit the proceeds against the debt. And the deed provides no specific time period within which Wells Fargo must elect an option. Furthermore, Texas law—which the parties agree applies here—provides that performance or tendered performance by the plaintiff is an essential element of a breach of contract claim. *Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 418 (5th Cir.2009). "[A] party in default cannot sue for breach of contract." *Stevens v. Deutsche Bank Nat. Trust Co.,* 570 Fed.Appx. 402, 403 (5th Cir.2014); *see Dobbins v. Redden,* 785 S.W.2d 377, 378 (Tex.1990).

Payne relies on *Statewide Bank & SN Servicing Corp. v. Keith,* 301 S.W.3d 776, 781–83 (Tex.App.-Beaumont 2009, pet. abated) for the proposition that a lender must "make a decision on utilizing the insurance proceeds fairly quickly." *Id.* at 782. The court in *Statewide Bank* held that a mortgagee's seven-month delay after receiving insurance proceeds to elect to repair property constituted a breach of the deed of trust. *Statewide Bank* is inapposite, however, because the plaintiff-homeowner had not defaulted on his loan. *Id.* at 778. Here, Payne defaulted in March 2008, and Wells Fargo received the insurance proceeds in May 2009. Payne offers no evidence that she performed her obligations under the note before Wells Fargo received the insurance proceeds. Rather than contest her failure to perform, Payne maintains that credit from the insurance payment would have cured her default. The terms of the deed, however, do not mandate that Wells Fargo apply insurance funds against the debt, and Payne's prior default precludes her breach of contract claim. Summary judgment was proper on

this claim. *See Eastty v. Wells Fargo Bank, N.A.,* No. A–13–CA–915–55, 2014 WL 2722319, at *3 (W.D.Tex. June 16, 2014) (dismissing homeowner's breach of contract claim predicated on misuse of insurance proceeds because of prior default).

■ Second, Payne maintains that Wells Fargo wrongfully foreclosed on the property. She alleges that the pre-foreclosure notices were defective because the notices of acceleration were sent after Wells Fargo received the insurance proceeds. Payne asserts that Wells Fargo's failure to apply the proceeds to the note led to defective notice, depriving her of the chance to cure her default. Under Texas law, to allege wrongful foreclosure, a plaintiff must demonstrate: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price. *Miller v. BAC Home Loans Servicing, L.P.,* 726 F.3d 717, 726 (5th Cir.2013). Payne neither alleges nor offers evidence of a grossly inadequate selling price or a connection between the selling price and alleged procedural defect. Accordingly, her wrongful foreclosure claim fails and summary judgment was appropriately granted.

■ Third, Payne argues that Wells Fargo's receipt of the insurance proceeds effectively constitutes a usurious interest rate on the note. Texas usury law provides that the "essential elements of a usurious transaction are: (1) a loan of money; (2) an absolute obligation that the principal be repaid; and (3) the exaction from the borrower of a greater compensation than the amount allowed by law for the use of money by the borrower." *Achee Holdings, LLC v. Silver Hill Fin., LLC,* 342 Fed.Appx. 943, 944 (5th Cir.2000) (internal quotation marks and citation omitted). Interest, as defined under Texas

law, "does not include compensation or other amounts that are permitted to be contracted for, charged, or received in addition to interest." *Id.* (citing Tex. Fin. Code § 301.002(a)(4)). The insurance proceeds received by Wells Fargo do not constitute interest; rather, the funds were paid to Wells Fargo as compensation for property damage pursuant to the deed of trust. The district court properly granted summary judgment on this claim.

■ Fourth, Payne contends that Wells Fargo committed common law fraud by failing to disclose receipt of the insurance proceeds. Under Texas law, "[a] fraud cause of action requires a material misrepresentation, which was false, and which was either known to be false when made or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 394 (5th Cir. 2010) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex.1998)). The economic loss rule, however, "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex.2007); *see Garcia v. Universal Mortg. Corp.*, No. 3:12–CV–2460, 2013 WL 1858195, at *9 (N.D.Tex. May 3, 2012) (applying the economic loss rule to bar mortgagor's fraud claim because the loss directly related to the loan). The various misrepresentations that Payne alleges caused her injury are directly related to the deed of trust and arise solely from her contractual relationship with Wells Fargo. Because her fraud claim is premised on Wells Fargo's performance under the note, her claim is barred by the economic loss rule. Summary judgment was properly granted on this claim.

■ Fifth, Payne argues that she stated a viable DTPA claim because she meets the statutory definition of a consumer. In order to establish a DTPA claim, the plaintiff must show that: (1) she is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts, and (3) these acts constituted a producing cause of the consumer's damages. *See Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex.1995). "A mortgagor qualifies as a consumer under the DTPA if his or her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of the complaint." *Miller*, 726 F.3d at 725. But servicing or administration of the loan is incidental to that objective, and does not bestow consumer status. *See FDIC v. Munn*, 804 F.2d 860, 865 (5th Cir.1986); *Woods v. Bank of Am., N.A.*, No. 3:11–CV–1116, 2012 WL 1344343, at *7 (N.D.Tex. Apr. 17, 2012) ("Where … the servicing or administration of the loan is merely incidental to the plaintiff's prior objective to purchase a residence, such events do not bestow consumer status upon the plaintiff for purposes of the DTPA."). Here, Payne borrowed money to purchase her home, secured by the deed. Her DTPA claim, however, is premised entirely on Wells Fargo's lending activities post-purchase. A good or service—*i.e.*, the home—does not form the basis of her complaint; her claims are predicated on Wells Fargo's disposition of the insurance proceeds, which were not part of the financing scheme to purchase her property. Payne does not qualify as a consumer under the DTPA, and summary judgment was appropriate on this claim.

■ Sixth, Payne alleges that Wells Fargo violated the Texas Theft Liability Act ("TTLA") by failing to comply with its contractual obligations relating to the insurance proceeds. The TTLS provides re-

covery for damages resulting from theft, which the code defines as the unlawful appropriation of property "with intent to deprive the owner of property." Tex. Penal Code Ann. § 31.03(a). Here, the express terms of the deed entitled Wells Fargo to any insurance payments. Because Wells Fargo did not commit a theft of the insurance proceeds, Payne's TTLA claim was rightly dismissed on summary judgment.

■ Seventh, Payne asserts that Wells Fargo acted inequitably by keeping the funds, entitling her to a claim for money had and received. But the existence of an express contract precludes equitable relief under the theory of money had and received. *See TIB–The Indepen. Bankers-Bank v. Canyon Comty. Bank*, 13 F.Supp.3d 661, 671–72 (N.D.Tex.2014) (citing *Tex. Star Motors, Inc. v. Regal Fin. Co.*, 401 S.W.3d 190, 202 (Tex.App.-Houston 2012–no pet.)). The note and deed of trust form an express contract between Payne and Wells Fargo, which forecloses her claim for money had and received. Summary judgment on this claim is affirmed.

■ Eighth, Payne presents a claim for slander of credit, arguing that the wrongful foreclosure "defamed" her credit. Under Texas law, "[d]efamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir.2006). Payne points to no evidence that Wells Fargo made false statements, and her claim cannot survive summary judgment.

Finally, Payne requests declaratory relief. But, in federal court, declaratory judgment is dependent on the assertion of viable causes of action. *See Stallings v. CitiMortgage, Inc.*, 611 Fed.Appx. 215, 217–18 (5th Cir.2015) ("When the other claims have been dismissed, it is appropriate also to dismiss any declaratory-judgment request."). Because we affirm the district court's grant of summary judgment on all preceding claims, we similarly affirm the dismissal of Payne's request for declaratory judgment.

Payne has failed to demonstrate any genuine issue of material fact with regards to her claims for breach of contract, wrongful foreclosure, usury, common law fraud, Texas Deceptive Trade Practices Act ("DTPA"), Texas Theft Liability Act, money had and received, slander of credit, and declaratory judgment. We AFFIRM the district court's grant of summary judgment.